UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANDREW D. MCCULLOUGH, | |
| Plaintiff, | |
| v. | Case No. 1:24-CV-412 JD |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Andrew McCullough applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging that he became disabled in August 2020. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Mr. McCullough was not disabled. The Appeals Council later denied his request for review, and Mr. McCullough now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### C. The ALJ's Decision

Mr. McCullough filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning in August 2020. His claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on April 9, 2024.

At the hearing, Mr. McCullough testified, among other things, that he suffers from severe depression, which began after his second divorce and the loss of his house and children. (R. at 45.) He said he experiences anxiety and has difficulty sleeping, which affects his ability to function. (R. at 54.) Mr. McCullough stated that his depression impacts his personal hygiene, as he does not take regular showers, bathing only once a week or every other week. (*Id.*) He reported feeling confrontational and having trouble communicating with others, leading to frequent arguments. (R. at 55–56.) Mr. McCullough claimed that he has a fear of driving. He said he had a car accident in his youth and he's "starting to get a big fear of driving." (R. at 61.) Mr. McCullough related that he drank alcohol heavily in 2021. In 2022, he drank "a little bit," and, at the time of the hearing he was drinking occasionally, once a week or so, one to two beers at a time. He acknowledged that reducing his alcohol consumption has led to some improvement in his mental health. (R. at 60.)

Mr. McCullough also testified about his activities of daily living. He said he lives with his parents and two brothers. (R. at 45.) He relies heavily on his mother for daily tasks, such as grocery shopping, laundry, cooking, and attending appointments. (R. at 55.) According to Mr. McCullough, he spends a long time in bed (going to bed around midnight and waking up at noon), often needing his mother to wake him up. He usually does not take naps. (R. at 57.) He engages in minimal activities, such as playing video games. He occasionally helps with tasks

4

around the house when prompted by his father, because he's concerned of getting "kicked out." (R. at 58.) Mr. McCullough has made some effort to dress more appropriately, but still requires reminders from his mother. (R. at 59.)

On April 25, 2024, the ALJ issued a decision finding that Mr. McCullough was not disabled. (R. at 21.) In doing so, the ALJ employed the customary five-step analysis. At step two, the ALJ determined that Mr. McCullough suffered from the following severe impairments: "major depressive disorder with a prior history of psychosis; generalized anxiety disorder; and attention deficit hyperactivity disorder (ADHD)." (R. at 12.) At step three, the ALJ determined that Mr. McCullough "does not have an impairment or impairments or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 13.)

Between steps three and four, the ALJ determined Mr. McCullough's residual functional capacity ("RFC"),[1] finding that he can

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can carry out detailed but not complex instructions. The claimant can deal with frequent changes in a routine work setting.

(R. at 15.)

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. The VE testified that such an individual could perform Mr. McCullough's past relevant work as a wastewater treatment attendant and grounds keeper. The VE also testified that there would be "millions" of other jobs available to the hypothetical person with Mr. McCullough's

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

RFC. The VE, however, testified that there would be no jobs for the hypothetical person if that "individual would be off task more than 10% of the workday, regardless of the reason," or if he accumulated more than twelve absences in a year or more than one absence a month on a regular and unscheduled basis. (R. at 64–65.) The ALJ accepted the VE's testimony, ultimately finding that Mr. McCullough was not disabled. According to the ALJ, while Mr. McCullough's mental impairments result in some functional limitations, they are not as severe as alleged, and his symptoms are fairly well controlled with medication and therapy. (R. at 16, 18.)

In support of this finding, the ALJ pointed to four psychiatric hospitalizations between April 2020 and August 2022, observing that two of them followed periods of heavy alcohol use. At discharge from each hospitalization, Mr. McCullough was reportedly mentally stable. The ALJ further observed that, from September 2022 through March 2023, Mr. McCullough's treatment was conservative, and his clinical examinations were described as "unremarkable," even though he continued to report depression, anxiety, and flat affect.

In her decision, the ALJ found the state agency consultant's initial opinion—that Mr. McCullough's mental impairments were non-severe—to be unpersuasive, indicating that it was "inconsistent with the overall evidence that supports Mr. McCullough having severe mental impairment." (R. at 18.)

As for the reconsideration-level opinion, the ALJ viewed the findings as mixed. She found persuasive the consultant's assessment that Mr. McCullough had moderate limitations in concentration, persistence, and pace. However, she rejected the remainder of the opinion as internally inconsistent and unsupported by the evidence.

The ALJ also evaluated the opinion of Dr. Paula Neuman, a psychiatric consultative examiner, who opined that working in some capacity could improve Mr. McCullough's health

and that he might benefit from starting with flexible employment.[2] The ALJ found this opinion unpersuasive, reasoning that it was internally inconsistent and unsupported by the medical evidence of record.

**D. Discussion**

In his appeal, Mr. McCullough argues that the ALJ failed to provide an adequate explanation for rejecting the consultative psychologist Paula Neuman's opinion, which would support a finding of disability if credited. He contends that the ALJ discounted evidence of his hospitalizations during periods of increased mental health symptoms on the grounds that they occurred when he was drinking heavily or not seeking treatment. According to Mr. McCullough, the ALJ should have considered whether non-compliance itself was a symptom of the mental illness. In the same way, Mr. McCullough insists that the ALJ erred by characterizing his treatment as "conservative" and as inconsistent with the need for a flexible work schedule. Finally, he insists that the ALJ erred by failing to explain why clinical findings of depressed and anxious mood, and flat affect did not support Dr. Neuman's conclusions.

**(1)** *Dr. Neuman's Medical Opinion*

Under the regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). But the ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the

---

[2] The VE testified that a flexible work schedule would be abnormal and reflected accommodated work that did not exist in significant numbers in the national economy. (R. at 65.)

7

prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). When considering the persuasiveness of any medical opinion, an ALJ must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, even though the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *See Tammy M. v. Saul*, 2021 WL 2451907, at *7–8 (N.D. Ind. June 16, 2021). The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "At the end of the day, once the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quotation marks and citation omitted).

8

Here, the ALJ considered Dr. Neuman's opinion following a consultative examination conducted on March 28, 2023, and found it unpersuasive. During the evaluation, Mr. McCullough presented with a depressed and anxious mood, and flat affect. (R. at 675.) When asked to do serial sevens, he produced one correct answer before going off track. (R. at 676.) He could only recall four digits forward and backward. (*Id.*) Dr. Neuman summarized her examination as follows:

> Mr. McCullough's performance on the Mental Status Exam indicates that his thought process is generally logical and coherent. His judgment and common sense appear to be mildly limited. His orientation is intact. His ability to sustain his concentration and persistence appears to be mildly limited. His physical adaptive tasks (i.e., completing health and hygiene tasks and household chores) appear to be intact. His language tasks, reading comprehension, written expression, and money management tasks) appeared to be intact. He does not have a driver's license and is unable to drive. It is suspended due to failure to pay child support.

(R. at 677.) Dr. Neuman diagnosed Major Depressive Disorder, moderate, prior history of some psychosis; Generalized Anxiety Disorder; and ADHD, unspecified, by prior diagnosis. (*Id.*) Dr. Neuman observed that Mr. McCullough "appears depressed and anxious" and that he "is under the care of mental health professionals." She then concluded that he may benefit from flexible employment:

> Working, in some capacity, would likely improve his mental health. Perhaps Voc Rehab or Carriage House may be able to assist this claimant in moving forward with flexible employment, initially.

(*id.*)

The ALJ found this opinion unsupported by Dr. Neuman's own examination and inconsistent with the broader record. In explaining the lack of support, the ALJ pointed to Dr. Neuman's own clinical findings stated above. As for consistency, the ALJ noted that his hospitalizations were preceded by heavy drinking and outside of that, his treatment was conservative:

9

> This is also inconsistent with the evidence in the overall record. In the record, there were instances where the claimant was hospitalized due to an increase in mental health symptoms, including suicidal ideation, but during these times, he was drinking heavily or not seeking treatment. Otherwise, his treatment was conservative, consisting of medication management and therapy with his provider noting his symptoms were fairly controlled with the claimant mostly denying any symptoms. His mental status examinations during this time were also generally unremarkable.

(R. at 20 (citations to the record omitted).)

The ALJ's outright dismissal of Mr. McCullough's psychiatric hospitalizations as insignificant because they were preceded by alcohol use is problematic. Before addressing why, the Court will briefly summarize each hospitalization reflected in the record.

Mr. McCullough was first hospitalized (involuntarily) April 23–24, 2020, "for threatening suicide in context of relationship struggle with his wife, anticipating separation, [and] facing difficulty with recent life changes." (R. at 557.) Upon being evaluated, Mr. McCullough admitted "to making suicidal statement out of an impulse[,] stress[,] anger." (*Id.*) He told the mental health providers that he was receptive to therapy and medication management, and he was subsequently started on Zoloft. He was discharged the following day. In reviewing the discharge notes, the ALJ observed that Mr. McCullough's "mental status examination was unremarkable, and he generally denied any symptoms." (R. at 16.)

He was again hospitalized a year later, May 12–17, 2021. He presented himself at the ER with suicidal thoughts. (R. at 486.) The medical record notes that he had been drinking a half gallon of vodka every two to three days for the last three to six months and was suffering withdrawal symptoms. The medical notes from May 14 state that he was depressed and hopeless, and with passive death wishes. (R. at 506.) He was treated using a multidisciplinary approach (pharmacotherapy, psychotherapy, and group therapy) while hospitalized. As the ALJ observed,

upon discharge five days later, he was alert, cooperative, well groomed, oriented, and otherwise stable. (R. at 17.)

"During a follow up with his mental health provider in July 2021, [Mr. McCullough] noted continued heavy alcohol use due to a marital affair and ongoing divorce." (R. at 17.) At the same time, he told the doctor that his "medication is working well though he is still very depressed over his divorce and not seeing his children." (R. at 372.)

He was next hospitalized April 27 through May 24, 2022. He had received no mental health treatment for several months before this hospitalization. Upon admission, he stated that he had been drinking half a gallon of vodka every 3 to 4 days. He said he was suicidal and planned to drink himself to death. He received mental health treatment and was stabilized and future-oriented by the time of the discharge. (R. at 409–410.) Reviewing the medical records, the ALJ observed that Mr. McCullough's "mood and anxiety had stabilized, and he denied any suicidal or homicidal ideations." (R. at 17.)

Following the discharge, Mr. McCullough had no follow up treatment and was again hospitalized August 26–31, 2022, for increasing depression and hearing voices. In her decision, the ALJ summarized this hospitalization:

> Upon admission, [Mr. McCullough] exhibited a depressed mood with suicidal ideation, a limited judgment and insight, and paranoid thought process. Yet, after being treated [through] pharmacotherapy, psychotherapy, and group therapy, the claimant was discharged in a better mood, no suicidal or homicidal ideation, and no hallucinations with the claimant prescribed medication and recommended outpatient mental health treatment.

(R. at 18.)

According to the ALJ, the hospitalization records do not support Dr. Neuman's opinion that Mr. McCullough required flexible employment because "during these times, he was drinking heavily or not seeking treatment." (R. at 20 (citations omitted).) This assessment is flawed, as the

11

ALJ effectively discounted the hospitalizations—and the circumstances leading up to them—without first evaluating whether they show functional limitations indicative of disability. Moreover, the ALJ ignored the fact that only two hospitalizations involved alcohol abuse, and she clumped them together in considering whether Dr. Neuman's opinion is consistent with the overall record. What's more, with each hospitalization, the ALJ emphasized Mr. McCullough's apparent recovery to the exclusion of the problems that sent him there in the first place. Yet "discharge summaries showing [claimant's] improved condition at the time of discharge—[is] hardly remarkable because one would expect a patient with severe mental impairments to improve upon a course of treatment in a structured hospital environment." *Harlin v. Astrue*, 424 F. App'x 564, 568 (7th Cir. 2011) (citing *Salazar v. Barnhart*, 468 F.3d 615, 624 (10th Cir. 2006); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)). "The ALJ need not provide a complete written evaluation of every piece of testimony and evidence. The ALJ may not select and discuss only that evidence that favors her ultimate conclusion but must confront the evidence that does not support her conclusion and explain why it was rejected." *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (cleaned up). Here, however, by placing undue weight on the discharge summaries, the ALJ adopted a "all's well that ends well" approach, disregarding the significance of Mr. McCullough's repeated psychiatric hospitalizations and the recurring crises that led to them.

But more importantly, given the evidence of alcohol dependence in two of Mr. McCullough's hospitalizations, the ALJ was required to follow the Agency's own regulations in evaluating the role of alcohol use in the disability determination, which she failed to conduct. Under SSR 13-2p, the ALJ must first conduct the standard five-step sequential evaluation, including consideration of any mental impairments impacted by alcohol use, before determining

whether alcohol use is material to the finding of disability. It is only after finding that the claimant is disabled, and there is medical evidence of alcoholism, that the ALJ may proceed under 20 C.F.R. § 404.1535 to decide whether the claimant would still be disabled in the absence of alcohol use. *See Simpson v. Berryhill*, No. 17-CV-2299, 2018 WL 2238593, at *11 (N.D. Ill. May 16, 2018) (quoting *Hundley v. Colvin*, 2016 WL 423548, at *5 (D.S.C. Jan. 12, 2016) (citing, *inter alia*, 20 C.F.R. §§ 404.1535, 416.935)). Rather than following this required process, the ALJ prematurely ruled out any chance of disability based on Mr. McCullough's alcohol use, short-circuiting the proper legal analysis.

Moreover, the ALJ has not explained why she believes that the alcohol abuse caused the mental crises. The ALJ may be correct in her assessment, but the opposite could be true as well. "That is, [Mr. McCullough's] mental illness may cause increased [alcohol] abuse, and not vice versa." *Deboer Lapole v. Berryhill*, No. 2:17-CV-24-PRC, 2018 WL 852059, at *5 (N.D. Ind. Feb. 14, 2018) (citing *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006)). "Additionally, if the ALJ is correct on causation, 'the fact that substance abuse aggravated [Mr. McCullough's] mental illness does not prove that the mental illness itself is not disabling." *Id.* (citing *Kangail*, 454 F.3d at 629 (7th Cir. 2006) and SSR 13-2p, 2013 WL 621536, *9 (Feb. 20, 2013) ("We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.")).

The Commissioner argues that Mr. McCullough cannot prevail because there is no evidence he engaged in alcohol use continuously for twelve months, the duration required for an impairment or combination of impairments to qualify as disabling under the Act. *See Barnhart v. Walton*, 535 U.S. 212, 219-20 (2002). But the Commissioner misses the point. Mr. McCullough

13

does not have to prove that the two hospitalizations involving the alcohol abuse are the sole basis for any disability finding; the relevant question is whether Mr. McCullough's underlying mental impairments—independent of his alcohol use—have caused functional limitations that meet the twelve-month duration requirement and prevent him from engaging in substantial gainful activity. Besides, the Court is not suggesting that, were Mr. McCullough to have abused alcohol for twelve months, he would prevail, as the Commissioner's argument seems to imply. As explained above, only the ALJ can answer that question by following the template in SSR 13-2p, which requires a specific finding on whether alcohol use is a contributing factor material to the determination of disability. Until the ALJ properly applies that framework, including assessing whether Mr. McCullough would still be disabled in the absence of alcohol use, any conclusion about materiality is premature.

In summary, both the ALJ's failure to build a logical bridge between the evidence and her conclusions, and the absence of substantial evidence supporting a key finding, require remand for further proceedings. And because remand is required, the Court need not address Mr. McCullough's remaining arguments, which his attorney can bring up with the ALJ.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: August 28, 2025

               /s/ JON E. DEGUILIO
              Judge
              United States District Court